IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

ROBERT MCCRACKEN, )
)
    Plaintiff )    Case No. 2:21-CV-4041
)
v. )
)
ABB Inc. d/b/a ABB DE INC.; and )
ABB ENTERPRISE SOFTWARE INC. )
a/k/a HITACHI ABB POWER GRIDS )
)
    Defendants )

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff McCracken opposes Defendants' motion to dismiss because his Amended Petition states a claim for worker's compensation discrimination under RSMO § 287.780.

## INTRODUCTION

Plaintiff filed suit in Missouri state court in August 2020 and amended his petition in February 2021 after receiving a notice of right to sue from the Missouri Commission on Human Rights. The Amended Petition asserts claims for worker's compensation discrimination in violation of RSMo § 287.780 and disability discrimination under the Missouri Human Rights Act. Defendants removed the action on March 2, 2021 based on diversity, claiming that the RSMo § 287.780 claim is frivolous. Defendants seek dismissal of Plaintiff's worker's compensation discrimination claim on the basis that Plaintiff did not exercise a protected right under Missouri's Workers' Compensation Law, that Plaintiff was not terminated, that Plaintiff has not established causation, and that Plaintiff's claims of not being allowed to return to work fall within the exclusive jurisdiction of the Workers' Compensation Division.

1

## STATEMENT OF FACTS

- Plaintiff has been employed by Defendants for over ten years as an electronic electrician. (Amended Petition ¶ 18.)

- Plaintiff injured his foot while at work in November 2018. The injury was caused by rubber boots provided to Plaintiff by Defendants as safety equipment. (Amended Petition ¶ 19-21, 82.)

- Plaintiff told his supervisor the rubber boots were too tight and they provided him with another pair. The second pair still did not fit properly and caused a blister to form on Plaintiff's right foot. (Amended Petition ¶ 22-23, 82.)

- Plaintiff reported the injury to his supervisor shortly after he became aware of the blister but received no response. (Amended Petition ¶ 24, 82.)

- Defendants did not send Plaintiff to the company nurse, refer Plaintiff to visit a company affiliated doctor, or report the injury to the appropriate state authority or to Defendants' insurance carrier or third-party administrator. (Amended Petition ¶ 25-26.)

- The blister became infected, the infection spread to the bones in his foot, and Plaintiff underwent surgeries and amputations as a result of the injury. (Amended Petition ¶ 27-30, 83-84.)

- In July 2019 Plaintiff's physician released him to return to work, but Defendants would not allow Plaintiff to return to work until he took a "work function test" which Plaintiff passed with 100% of expected results. Plaintiff returned to work in August 2019. (Amended Petition ¶ 33-36, 85-86.)

- After returning to work the infection in Plaintiff's foot returned and he had to

undergo further surgeries and amputations. Plaintiff informed Defendants of the re-injury. Defendants told Plaintiff to apply for disability through the disability insurance provider. (Amended Petition ¶ 36-39, 85.)

- On October 10, 2019 Plaintiff's physician released him to return to work without restrictions. Defendants refused to allow Plaintiff to return. They required him to take another work function test in late October 2019 and then, when he passed that test, required him to take an additional "balancing test."  (Amended Petition ¶ 40-48, 86-87.)

- Even after passing the work function tests and the balance test, Defendants would not allow Plaintiff to return to work for months, and placed restrictions upon Plaintiff. (Amended Petition ¶ 51-68, 86-87.)   One of the restrictions included climbing ladders. Plaintiff had passed the ladder portion of the work function test on October 28, 2019. (Amended Petition ¶ 51-55.)   Defendants still would not allow Plaintiff to return to work. (Amended Petition ¶ 85, 87-88.)

- Plaintiff's physician and Defendants' doctor discussed whether Plaintiff required restrictions. Plaintiff's physician believed Plaintiff could return to work without restrictions. To reconcile the differences, Plaintiff's physician suggested that Plaintiff be limited to 8-hour shifts like other employees with the same job title. (Amended Petition ¶ 57-61.)  Based on the proposed restriction / accommodation, however, Defendants denied Plaintiff's request to return to work. (Amended Petition ¶ 62-63, 87-88.)

- Defendants did not allow Plaintiff to return to work until April 2020. (Amended Petition ¶ 68-70, 85.)

3

- Defendants' actions resulted in delaying Plaintiff's return to work for at least five to six months. Defendants directed Plaintiff to apply for disability. Defendants later, however, insisted that Plaintiff pay back the disability benefits he received between October 2019 and April 2020. (Amended Petition ¶ 64-68, 72-73.)
- While Plaintiff had taken other work function tests during his employment, he had never been required to take a balance test. (Amended Petition ¶ 48-49.) On information and belief, other employees had not been required to take an additional balance test after passing a work function test. (Amended Petition ¶ 50.)
- Plaintiff was discriminated and retaliated against for reporting a work injury. Upon information and belief, Plaintiff is not the only employee of Defendants to be discriminated and retaliated against after reporting an injury at work. (Amended Petition ¶ 76-77.)

## SUGGESTIONS IN OPPOSITION TO MOTION

### I. STANDARD OF REVIEW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must … 'state a claim to relief that is plausible on its face.'" Maximum Fidelity Surgical Simulations, LLC v. Baker, 2020 WL 2331200 *2 (W.D. Mo. 2020) (quoted cases omitted) "A claim has facial plausibility when its allegations rise above the 'speculative' or 'conceivable' and where the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Maximum Fidelity, 2020 WL 2331200 *2 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Such a complaint will be liberally construed in the light most favorable to the plaintiff." Maximum

4

Case 2:21-cv-04041-NKL   Document 18   Filed 03/24/21   Page 4 of 16

Fidelity, 2020 WL 2331200 *2 (quoted case omitted). "The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor…." Doe v. Francis Howell School Dist., 2018 WL 1519374 *2 (E.D. Mo. 2018). "[T]he question is not whether the claimant "will ultimately prevail … but whether his complaint [is] sufficient to cross the federal court's threshold." Doe, 2018 WL 1519374 *2 (quoting Skinner v. Switzer, 562 U.S. 521, 530 (2011)).

Defendants insist that their Motion to Dismiss must be granted because Plaintiff's Amended Petition contains only legal conclusions and no factual support. Defendants' motion does not identify any specific allegations that Defendants deem conclusory. Plaintiff's Amended Petition, however, sets forth detailed and specific factual allegations. The specific factual allegations, accepted as true, state a claim to relief that is plausible on its face.

**II.   Plaintiff's Amended Petition states a claim for discrimination under RSMo § 287.780.**

Plaintiff's Amended Petition states a claim for worker's compensation discrimination under RSMo § 287.780 because Plaintiff reported a work injury and reinjury to Defendants. Reporting an injury satisfies the requirement of exercising a right under RSMo § 287.780 which provides that

> no employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when exercising of such rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer. For purposes of this section, "**motivating factor**" shall mean that the employee's exercise of his or her rights under this chapter actually played

a role in the discharge or discrimination and had a determinative influence on the discharge or discrimination.

(Emphasis in original.)

The required elements of a worker's compensation discrimination claim under RSMo § 287.780 are 1) the plaintiff was an employee of the defendant at the time of the injury; 2) the plaintiff exercised a right under Missouri's Workers' Compensation Law; 3) the employer discriminated against him; and 4) the exercise of rights under Missouri's Workers' Compensation Law motivated the employer's discriminatory conduct. *See* Templemire v. W&M Welding, Inc., 433 S.W.3d 371, 377-84 (Mo.banc 2014); Morgan v. Plaza Motor Co., 166 F. Supp. 3d 969, 974 (E.D. Mo. 2015). The filing and/or pursuit of a worker's compensation claim is not a required element under RSMo § 287.780.

### A. Plaintiff's Amended Petition states a claim for Worker's Compensation discrimination under RSMo § 287.780.

Under this point, Defendants insist that Plaintiff cannot pursue a claim under RSMo § 287.780 because he did not file a formal worker's compensation claim and that Plaintiff failed to establish causation.

### 1. Plaintiff exercised a right under Missouri's Worker's Compensation Law by reporting his work injury to Defendants.

Citing a federal district court case from Iowa, construing Iowa law, Defendants argue that the absence of a formal worker's compensation claim or pursuit of a claim precludes Plaintiff's worker's compensation discrimination claim under RSMo § 287.780. *See* Brumgarner v. Grafco Industries LP, 581 F. Supp. 2d 1052, 1062 (S.D. Iowa 2008) (protected activity under Iowa's worker's compensation law requires employee to put employer on notice of employee's desire to seek worker's compensation.)

Plaintiff's claim for worker's compensation discrimination is brought under **Missouri** law, not Iowa law. RSMO § 287.780 requires only that an employee exercise a right under Missouri's Workers' Compensation Law. A formal claim for worker's compensation is **not** a required element of a claim for discrimination under § 287.780. *See* Dame v. Southwestern Bell Telephone Co., 2021 WL 67213 *3 (W.D. Mo. 2021); Davis v. Villages of Jackson Creek, LLC, Case No. 4:19-cv-01011-BCW (W.D. Mo. July 6, 2020); Welker v. Panera Bread Co., 2011 WL 1327427 *2 (E.D. Mo. 2011); Demi v. Sheehan Pipeline Constr., 452 S.W.3d 211, 216-217 (Mo. App. E.D. 2014). Missouri employees can exercise their rights under Missouri's Workers' Compensation Law in several different ways, including **reporting a work injury to the employer**. *See* Dame, 2021 WL 67213 *3; Davis, Case No. 4:19-cv-01011-BCW; Demi, 452 S.W.3d at 216-217.

The plaintiff in Davis claimed that workplace harassment had caused her mental distress, that she reported this to her employer, and thereafter she was fired. *See* Davis, Case No. 4:19-cv-01011-BCW. The plaintiff filed suit in state court claiming workers' compensation discrimination under RSMo 287.780 and racial discrimination. The defendants removed on the basis that the workers' compensation discrimination claim was fraudulently joined because the Plaintiff had not made a formal worker's compensation claim. Davis determined that the plaintiff's internal report of injury was sufficient to trigger protection under Missouri's Workers' Compensation Law. Further, Davis found that the plaintiff's report of injury formed the basis of a potential worker's compensation claim. *See* Davis, Case No. 4:19-cv-01011-BCW at 5. The Court concluded that the worker's compensation discrimination claim was not fraudulent and remanded the case to state court.

Here, Plaintiff expressly alleged, in three separate paragraphs of the Amended Petition, that he reported the work injury to Defendants. (Amended Petition ¶ 24, 38, 82.) Accordingly, Plaintiff's Amended Petition alleges that Plaintiff exercised a right under Missouri's Workers' Compensation Law. *See* Dame, 2021 WL 67213 *3; Davis, Case No. 4:19-cv-01011-BCW at 5; Demi, 452 S.W.3d at 216-217. As such, Defendants' motion to dismiss must be overruled.

### 2. Plaintiff's Amended Petition, and the inferences reasonably drawn therefrom, sufficiently alleges causation.

Defendants argue that Plaintiff failed to establish causation between Plaintiff's exercise of a right and any discrimination that followed. Defendants insist that Plaintiff was not subjected to discriminatory treatment because he was allowed to return to work.

In Dame the plaintiff alleged that upon "reporting injuries to management, he was treated adversely by management who ultimately denied plaintiff advanced employment opportunities and targeted plaintiff for arbitrary discipline in hopes of terminating plaintiff's employment." Dame concluded that the allegation sufficiently asserted that Plaintiff's exercise of rights contributed to the adverse treatment. Dame, 2021 WL 67213 *4.

Here, Plaintiff alleged that he reported a work injury to Defendants in November 2018 and that Defendants took no action in response to his report of injury. (Amended Petition ¶ 24-26, 82.) Plaintiff alleged his physician released him to return to work in July 2019, but Defendants would not allow Plaintiff to return until he passed a "work function test." (Amended Petition ¶ 31-36, 85-86.) Plaintiff's return to work was delayed and he was required to take the work function test. (Amended Petition ¶ 33-36, 85-86.)

When Plaintiff reported a re-injury to his foot in the fall of 2019 Defendants instructed him to contact the disability insurance provider. (Amended Petition ¶ 37-38.)

8

Plaintiff was cleared to return to work, without restrictions, on October 10, 2019. (Amended Petition ¶ 40.) Once again Defendants required Plaintiff to take a work function test and then an additional "balancing test" before he would be allowed to return to work. (Amended Petition ¶ 41-51.) Plaintiff passed both of those tests but was not allowed to return to work. (Amended Petition ¶ 44-45, 51-56.) Plaintiff tried to contact Defendants multiple times after the balance test but received no response. (Amended Petition ¶ 51.) On November 5, 2019 Defendants' physician told Plaintiff that he could only return to work with restrictions imposed by Defendants' physician. (Amended Petition ¶ 53-56.)

Plaintiff asked his physician to discuss the restrictions with Defendants' doctor. (Amended Petition ¶ 57.) Plaintiff's physician believed that Plaintiff could return without any restrictions. (Amended Petition ¶ 58.) In trying to resolve the differences as to whether Plaintiff required restrictions, Plaintiff's physician suggested that Plaintiff work 8-hour shifts. (Amended Petition ¶ 60-61.) Defendants used that proposal to insist that Plaintiff had work restrictions and to refuse to allow Plaintiff to return. (Amended Petition ¶ 62-63.)

Plaintiff sought help from the union. (Amended Petition ¶ 64-66.) Defendants responded to that request to return by stating that Plaintiff "was not cleared to come back to work." (Amended Petition ¶ 64-66.) Plaintiff continued to contact Defendants between November 2019 and March 2020 to try to return to work. (Amended Petition ¶ 67-68.)

Plaintiff was finally allowed to return to work in April 2020, without restrictions. (Amended Petition ¶ 70-71.) Notwithstanding that Defendants instructed Plaintiff to contact the disability insurance provider and refused to allow Plaintiff to return to work without restrictions, Defendants later told Plaintiff that he must repay the long-term disability benefits he had received. (Amended Petition ¶ 70, 72.)

9

Case 2:21-cv-04041-NKL   Document 18   Filed 03/24/21   Page 9 of 16

Plaintiff alleged that he was discriminated against after reporting the work injury. (Amended Petition ¶ 33-34, 41-68, 72.) Plaintiff alleged that he was not the only employee discriminated against after reporting a work injury. (Amended Petition ¶ 77.) Plaintiff alleged that while he had taken work function tests during his employment, he had never been required to take an additional balancing test. (Amended Petition ¶ 49-50.)

The standard applicable to a Rule 12(b)(6) motion to dismiss requires Plaintiff's allegations be taken as true and all reasonable inferences be drawn in Plaintiff's favor. Maximum Fidelity, 2020 WL 2331200 *2; Doe, 2018 WL 1519374 *2. "[T]he question is not whether the claimant "will ultimately prevail … but whether his complaint [is] sufficient to cross the federal court's threshold." Doe, 2018 WL 1519374 *2. Moreover, "whether plaintiff can prove causation is a fact question that should not be resolved at the pleading stage." Barton v. Ocwen Loan Servicing LLC, 2012 WL 4449860 (D. Minn. 2012); Reed v. Experian Info. Solutions, 321 F. Supp. 2d 1109, 1114-15 (D. Minn. 2004).

Plaintiff's allegations, accepted as true and combined with the inferences drawn therefrom, set forth a causal connection between Plaintiff's exercise of a right under Missouri's Workers' Compensation law and adverse / discriminatory treatment against him. *See* Dame, 2021 WL 67213 *4. The mere fact that Defendant twice allowed Plaintiff to return to work does not disprove causation. Each time Plaintiff attempted to return, Defendants delayed his return and required him to undergo additional testing. On the second occasion that Plaintiff was cleared to return to work, he was required to submit to a work function test and a balance test. Even after passing both, he was not allowed to return to work without restrictions. Further, his return to work was delayed by over five months.

Plaintiff's Amended Petition is sufficient to overcome Defendants' motion to dismiss and state a claim under Missouri law. Further it provides a reasonable basis for predicting that Missouri law might impose liability on these facts. *See* Dame, 2021 WL 67213 *2-3; Davis, Case No. 4:19-cv-01011-BCW; Welker, 2011 WL 1327427 *2; Demi, 452 S.W.3d at 216-217.

### B. Termination of employment is not a prerequisite to a claim for worker's compensation discrimination under RSMO § 287.780.

Plaintiff concedes that he was not terminated from employment. Plaintiff does, however, have a claim for worker's compensation discrimination under RSMO § 287.780 as is set forth in Plaintiff's Amended Petition. Termination of employment is not a requirement or prerequisite to a worker's compensation discrimination claim under RSMO § 287.780. *See* Dame, 2021 WL 67213 *3; Davis, Case No. 4:19-cv-01011-BCW; Demi, 452 S.W.3d at 216-217.

### C. Plaintiff has alleged facts sufficient to show a causal connection between his exercise of rights under Missouri's Workers' Compensation Law and the discrimination against him.

Defendants contend that Plaintiff failed to allege facts that would establish causation between the exercise of that right and the discrimination against him. Defendants then insist that Plaintiff experienced no discrimination because he was allowed to return to work which "cuts off the temporal proximity required to establish a causal connection between the work-related injury" and the discrimination against Plaintiff. Defendants cite no authority supporting their conclusions.

Regarding causation, Plaintiff incorporates his discussion under Section II.A.2., *supra*. Defendants' argument that an employee's return to work cuts off the "temporal proximity required to establish" causation between the employee's work-related injury and

the discriminatory actions is not supported by Missouri law. First, Plaintiff exercised a right under Missouri's Workers' Compensation Law by reporting his injury and re-injury. *See* Section II.A.1., *supra.* Those reports of injury occurred in November 2018 and the fall of 2019. Second, Defendants provide no authority that an employee's return to work interrupts the temporal proximity of events or otherwise destroys causation.

The case cited by Defendants, Hickman v. May Dept. Stores Co., 887 S.W.2d 628, 631 (Mo. App. E.D. 1994) is distinguishable. First, Hickman case did not address a motion to dismiss for failure to state a claim and does not address whether the factual allegations in the petition were sufficient to withstand a motion to dismiss. Second, Hickman was reviewed under the exclusive causation standard. Third, the plaintiff in Hickman presented evidence that he received his first negative evaluation seven months after his claim for worker's compensation and was terminated nine months after his claim for worker's compensation. He presented no evidence of discriminatory events during the seven months between the filing of his claim and the negative evaluation.

Here, Plaintiff alleged sufficient facts to demonstrate a pattern of discrimination against Plaintiff after his report of injury. He reported his first injury in November 2018 and was off work for several months with surgeries, amputations, and medical treatment. (Amended Petition ¶ 19, 24, 27-31.) When he was cleared to return to work in July 2019, Defendants refused to allow Plaintiff to return and instead required him to undergo a work function test. (Amended Petition ¶ 31-35.) Plaintiff was barred from returning to work for several weeks. (Amended Petition ¶ 36.)

Shortly after returning to work in August 2019, Plaintiff re-injured his foot and reported that re-injury to Defendants. (Amended Petition ¶ 37-38.) Plaintiff was cleared to

return to work without restrictions in October 2019 but was required to undergo a work function test in late October and a balance test in November. (Amended Petition ¶ 40-51.) Plaintiff made multiple attempts to return to work between November 2019 and March 2020 and even sought the assistance of the union. (Amended Petition ¶ 64-69.) Unlike the plaintiff in Hickman, Plaintiff had no lengthy spans of time in which no discriminatory events occurred. Rather, since Plaintiff notified Defendants of his clearance to return to work in July 2019, the discrimination began and continued.  Plaintiff was required to undergo additional testing, was placed under restrictions when Plaintiff he had passed the testing, was denied his requests to return to work, and he was instructed to repay the disability benefits that Defendants had told Plaintiff to seek.

Defendants not only conclude that Plaintiff failed to establish causation, but also contend that Plaintiff's claim under RSMO § 287.780 is more appropriately brought as a disability claim under the MHRA. Once again, Defendants conclude that Plaintiff did not exercise a right under Missouri's Workers' Compensation Law because Plaintiff did not pursue or make a formal worker's compensation claim. In response to this argument, Plaintiff incorporates his argument and discussion under Section II.A.1, *supra.*

Defendants have presented no authority for their position that Plaintiff's RSMO § 287.780 claim is more appropriately brought as a disability discrimination claim. Further, Defendants present no authority that Plaintiff's RSMO § 287.780 claim should be dismissed simply because Defendants find it more appropriately labeled as disability discrimination. Defendants simply have no right to recast Plaintiff's causes of action. *See* Roberts v. Unimin Corp., 2016 WL 7106392 (E.D. Ark. 2016) ("Try as it might … the defendant cannot recast the action as one for breach of contract, rather than one for

13

Case 2:21-cv-04041-NKL    Document 18    Filed 03/24/21    Page 13 of 16

declaratory judgment.") The "plaintiff is the master of his or her lawsuit and can choose which causes of action to plead." Cox v. Kansas City Chiefs Football Club, Inc., 473 S.W.3d 107, 118 (Mo.banc 2015); City of O'Fallon, Mo. v. CenturyLink, Inc., 930 F. Supp. 2d 1035, 1039 (E.D. Mo. 2013).

### D. Plaintiff's RSMO § 287.780 claim does not fall within the exclusivity provision of Missouri's Workers' Compensation Law.

Defendants argue that Plaintiff's RSMO § 287.780 claim falls within the exclusive jurisdiction of the Missouri Workers' Compensation Division. Defendants insist that Plaintiff's claim of workers' compensation *discrimination* is a complaint about the medical care or treatment provided by Defendants' worker's compensation physicians. Defendants, however, fail to identify any allegation or fact within Plaintiff's Amended Petition that supports this argument.

Defendants' cited cases are distinguishable. First, Plaintiff did not allege that Defendants contested a worker's compensation claim thereby resulting in discrimination. *Compare* Jackson v. General Motors LLC, 2020 WL 3469334 *35 (E.D. Mo. 2020). Second, Plaintiff did not allege that he was provided "inadequate" treatment. *Compare* Lambrich v. Kay, 507 S.W.3d 66, 80 (8th Cir. 2016).

Here, Plaintiff's Amended Petition states an RSMO § 287.780 claim for discrimination. Plaintiff alleged that his physician cleared him to return to work in July 2019 and October 2019. (Amended Petition ¶ 31, 40.) Plaintiff alleged that he notified his employer on both occasions that he had been cleared to return to work. (Amended Petition ¶ 32, 41.) On both occasions Defendants refused to allow Plaintiff to return to work and instead required him to undergo further work function tests with their worker's compensation physicians. (Amended Petition ¶ 33-34, 42-43, 45-49.) Even after Plaintiff

14

passed the work function tests required of him, Defendants required Plaintiff to undergo balance testing in November 2019 and ignored and denied his requests to return to work. (Amended Petition ¶ 42-49, 51-52.)

Plaintiff alleged that he was not aware of any other employees being required to take additional testing after passing a work function test. (Amended Petition ¶ 50.) While Plaintiff passed the additional balance test that was required of him, he was only allowed to return to work with restrictions that were not required by his personal physician or the work function and balance tests. (Amended Petition ¶ 53-56.) When Plaintiff's personal physician attempted to discuss the restrictions and reach a compromise, Plaintiff's request to return to work was denied. (Amended Petition ¶ 57-62.)

Plaintiff did not allege that he received workers' compensation *benefits* or *treatment*. Plaintiff did not allege that Defendants contested a claim or provided inadequate treatment. Plaintiff did not seek additional testing from Defendants' worker's compensation physicians after his own physician had released him to work. Rather, Plaintiff alleged that Defendants' actions in requiring additional testing was discriminatory under RSMO § 287.780. (Amended Petition ¶ 50, 61-68, 76-77, 82, 87-88.)

## **CONCLUSION**

WHEREFORE, Plaintiff seeks an Order from this Court overruling Defendants' Motion to Dismiss.

*Respectfully Submitted,*

WHITE, GRAHAM, BUCKLEY, & CARR L.L.C.

By: /s/ Gene P. Graham, Jr.
    GENE P. GRAHAM, JR.   34950
    DEBORAH J. BLAKELY   47138

15

Case 2:21-cv-04041-NKL   Document 18   Filed 03/24/21   Page 15 of 16

19049 E. Valley View Pkwy, Suite C
Independence, Missouri 64055
816-373-9080  Fax: 816-373-9319
ggraham@wagblaw.com
dblakely@wagblaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record via the court's electronic court filing system on this 24th day of March 2021.

/s/ Gene P. Graham, Jr.
Counsel for Plaintiff